Allen, J.
The hearing and trial before the Supreme Court upon the petition of the appellant was evidently very informal, and neither party taking technical objections, the proof partook of the laxity that pervaded the entire procedure.' The petitioner made a prima facie case for vacating the assessment, and meeting neither objections to the regularity or sufficiency of his proof or conflicting evidence, was content to submit his claim to relief without that full technical proof which, possibly, might have been adduced. He made a case upon which it was adjudged, that proof of the several matters alleged in the petition had been made, satisfactorily establishing the irregularities alleged by him, and upon which an order was made vacating the assessment. The great want of precision in this and most of the appeals brought to this court from orders made upon petitions to vacate assessments in the city of Hew York, doubtless, arises from the fact that the counsel as well as the judges in the city, are very familiar with the general course of procedure, and the history of the legislative and corporate action involved, and much is assumed and taken as true without strict proof, and the record is made.only to present the real questions intended to be presented in the individual case.
The counsel for the corporation takes several objections to the right of the petitioner to relief, which will be noticed in their order.
First, it is objected that it does not appear that no notice was *20 published in the New York Leader, of the proposition pending before the common council for the flagging of Twenty-ninth street, for which the assessment was made, pursuant to section 7 of the amended charter of 1857. (Laws of 1857, chap. 446.) The proof was, that no resolution, report of committee, or proceeding of either board of the council relating to the work, was published at any time during the pendency of the' proceedings, or before the final action of that body. The law requires all resolutions and reports of committees, recommending any specific improvement involving the appropriation of public moneys, or the taxing or assessing the citizens of the city, to be published immediately after the adjournment of the board, under the authority of the board, in all the newspapers employed by the corporation ; and declares that they shall not be passed or adopted until after such notice has been published at least two days. The notice prescribed by statute is, the publication of the resolution and report of committee recommending the work and the expenditure, and no other or different notice would have been a compliance with the statute, so that the omission to publish" the statutory notice was well proved by evidence that neither the resolution or the report of the committee, or any of the corporate proceedings were published.
The second objection is, that the petitioner did not prove that he was the owner of the premises charged with the assessment at the time of the application. The petition stated, that the petitioner was, at the time of the assessment, and still is, the owner of the lots and premises mentioned. The affidavit made for the purpose of the hearing states, that he was, at the time of the confirmation of the assessment, the owner of the lots, and still is held liable for the payment of the assessment in question. This, in the absence of any exception to its sufficiency, or any challenge as to its truth, was a sufficient allegation and proof that he was aggrieved by the assessment if fraud or irregularity had been committed in respect to it. Any party aggrieved may apply for relief under the act giving relief in cases like the present.' (Laws *21 of 1858, chap. 838.) The petitioner may be still the owner of the lots, or held to indemnify his grantee against the assessment, and to remove it as a cloud upon the title, and, in either event, he is a party legally aggrieved by the assessment if fraudulent or illegal. Townsend v. Goelet (11 Abb., 187), and Bissell v. Kellogg (60 Barb., 617), were equitable actions to remove clouds from the title to realty, and not proceedings for relief under the act of 1858, by which this proceeding is authorized.
It is claimed, thirdly, that the petitioner is not within the exception of section 7 of chapter 580 of the Laws of 1872, as amended by chapter 313 of the Laws of 1874. By these statutes it is enacted, that assessments for local improvements in the city of Hew York shall not be vacated or set aside for, or by reason of, any irregularity or omission to advertise, etc., except only in cases in which fraud shall' be shown, and in cases of assessment for repaving any street or public place, upon property for which an assessment has once been paid for paving the same street or public place. The objection in behalf of the corporation is, that the assessment of the petitioner’s lot was not for repaving, but for flagging, the claim being that the statute distinguishes between the two forms of pavement. It was proved that the lots had been assessed in 1850 for flagging, and that the assessment had been paid. The precise character, extent, or cost of the work, for which the present assessment was made, do not appear on the record. It is stated, generally and concisely, to be a flagging of the street, but whether of the whole or some part of the street does not appear, but it is evidently of the same character as that paid for in 1850, and a reflagging of the street, then flagged, and the expense charged upon the lots. Flagging is one species of pavement, to wit, a paving with flat stone, and is more peculiarly adapted and generally used in paving the sidewalks, or that part of the street set apart for the use of pedestrians, and, perhaps, it may be suitable in some cases for carriage-ways, but wherever used it is a pavement, and a relaying of flags *22 is. a repaving of the portion of the street so reflagged. To pave is to cover with stones or brick, or other suitable material, so as to make a level or convenient surface for horses, carriages, or foot-passengers, and a sidewalk is paved when it is laid or flagged with flat stones as well as when paved-with brick, as is frequently done. If the laying of a sidewalk or footway with brick would be a paving, or if done a second time a repaving, and it would certainly come within the ordinary signification of that term, then a relaying the same surface with flat- stones would be well designated under the general term as a pavement. The difference in the material could not change the character or general identity of the work as embraced in the generic term, which includes any process for covering a street or walk or public place with stone or brick or concrete, so as to give a level surface, con-venient for use in the manner and for the purpose for which it was intended. -
But it is urged that the act of 1872, in which this exception is found, distinguishes between a pavement, as applied to the carriage-way, and the flagging of a sidewalk. The first section of the act was evidently prepared with a view to prevent, as far as possible, any evasion of it, and to bring within its provisions every contract and engagement of the city for a class of local improvements, by whatever name the work or improvement might be known or called; and a commission was created for the investigation of all such contracts, and none were permitted to be carried out and performed, except upon the certificate of the commissioners that there had been no fraud in awarding the same. It was designed to detect and correct every fraud in the awarding of the contracts specified in the city of New York, and to leave no loophole by which any could escape scrutiny, or the contractors have the benefit of their contract, without first passing the scrutiny of the commissioners. The corporate authorities of the city were under a cloud, and the legislature and the public were, to say the least, suspicious of them, and hence the terms used in subjecting the contracts to the examination and super *23 vision of the commissioners were selected, not with a view to conciseness, but rather with a view, at the expense of brevity, to embrace every possible work intended, and the language is unusually copious and suggestive, not only of works under a general name, but of every work and detail of particular improvements. With this object in view, the legislature did mention particularly grading, paving, repaving, flagging, or otherwise improving streets, avenues, and public places, or any part of them, and setting or resetting curbs thereon, or guttering the same, or building sewers therein. No interpretation could take contracts without the operation of this law, and that was the object of this unusual, description and detail of objects. But the exception in the seventh section, under which the petitioner claims relief, was enacted in favor of the honest citizen, and not to circumvent corrupt officials and wily contractors; to save the property owner the right to equitable relief against a fraudulent charge upon his property, or one imposed without authority of law, and it should receive an interpretation consistent with its benign intent, liberal, according to its just terms, and not restricted. Upon any construction, relief cau only be had under it by one who has been assessed for, and paid for work once done, and who can establish a fraud or a legal irregularity, which, in the case before us, is an entire want of power, by reason of a noncompliance with the statute in renewing the improvement and imposing a second assessment. The object of the first and seventh sections of the act are so entirely distinct that the one can not be properly referred to in aid of the interpretation of the other, and, to me, it seems unreasonable to say, that when the legislature, in this remedial clause, used the term paving it was intended to exclude a single species of paving, to wit, a laying with flat stones, rather than with concrete or brick or stones, or some other form.
It is persistently and earnestly urged upon us that it is unjust to the city at large to transfer this burden from the individual lot-owner to the tax-payers generally, and that, therefore, a stringent construction should be put upon the lan *24 guage of the exception. I have not been greatly impressed with this argument. The foundation of the claim for relief is the wrong-doing of the city officials, either actual fraud or the omission of those acts prescribed by the legislature, and required to be performed as a condition precedent to the existence of the power and for the protection of the property owner and the individual tax-payer. A legal hardship and a wrong is done to the individual by compelling him to pay an assessment under such circumstances, but the actual hardship is less when the consequences of official delinquencies are visited upon the constituency at large than when it is made to rest upon a single individual, and the equities would seem to require that all the principals of the faithless agent should suffer for his acts rather than one out of many. The equities are, in my judgment, in favor of the individual. It is begging the question to say that his property is benefited by the improvement.. It may be so, and if so, let that fact be properly determined, and the charge reassessed pursuant to law.
A property owner should be permitted to'resist assessments for local improvements upon a charge of fraud or legal irregularities when fairly within the statute authorizing it, as I think the petitioner is. The right of the petitioner is more clearly demonstrated by the reasoning of Judge Daniels at Special Term.
A fourth objection is, that the New York Leader was not one of the papers in which, by the act of 1857, the notice of the proceedings and doings of the common council in respect to the proposed improvements were required to be published. This question has been so repeatedly before this court, and decided adversely to the corporation, that it is hardly necessary to reconsider it. (In re Douglass, 46 N. Y., 42; In re Astor, 50 id., 363; In re Smith, 52 id., 526.)
In 1863 the mayor and comptroller were required by statutes (Laws of 1863, chap. 227, § 2) to designate four papers having the largest daily circulation, and six others in their discretion, in which the city and county advertisements *25 should be published. The New York Leader was designated in July of that year as one of the six papers. The necessary publication of the proceedings of the common council was not, as claimed by the counsel for the city, restricted to the four daily papers having the largest circulation, but the charter of 1857 required the publication in all the papers “ employed by the corporation,” including those employed under the discretionary power as well as the four daily papers having the largest circulation. A designation by the proper authorities is an “ employment” of the paper by the corporation in the absence of any evidence that the service was declined by the paper. The corporation could only employ the paper in the manner prescribed by statute. This was decided in the Astor Case (supra). There is no evidence that this designation has ever been revoked, or the employment terminated, or that the New York Leader has been superseded in any way as one of the official papers of the city. By subsequent acts of the legislature, power was conferred upon the city officials to designate the papers in which the corporation proceedings and notices should be published, but there is no proof before us that the power was exercised at any time, and the presumption attaches in the absence of proof to the contrary that the employment of the New York Leader continued. Such would be the legal effect of an omission of the proper officers to exercise the powers conferred upon them by the subsequent legislature. (In re Folsom,* MS. opinion of Ch. J. Churoh.) With great industry the counsel for the corporation has compiled what purports to be, and no doubt is, a faithful history of the action of the corporate authorities in the designation from time to time, and under the varying legislation of the State, of newspapers, as the official advertising papers of the city. The labor is well bestowed, and the history is interesting and valuable, but this court cannot take judicial notice of any of the facts stated. We are confined to the evidence *26 taken at Special Term, and that was limited to proof of the designation of the New York Leader and the New York Despatch, as two of the papers authorized by the act of 1863.
This disposes of all the objections taken to the case made by the petitioner, and entitle him to a reversal of the order of the court at General Term and an affirmance of the order at Special Term vacating the assessment, with costs.
All concur; except Grover, J., dissenting.
Order reversed and ordered accordingly.

 56 N. Y„ 60.